UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DELBERT LEE WHETSTONE, ) <br> ) <br> Defendant. ) <br> ) | No. CR10-385RSL <br><br> GOVERNMENT'S SENTENCING MEMORANDUM |

## I. INTRODUCTION

The United States agrees with the Probation Officer that a sentence of 36 months in prison is the appropriate sentence in this case in which the defendant, a physician, repeatedly prescribed the powerful narcotic OxyContin without a medical justification and then attempted to hide the cash proceeds from his lucrative but largely illicit practice from the Internal Revenue Service. The sentence would recognize the seriousness of these offenses in which the defendant abused his authority as a physician to prescribe, in exchange for cash, valuable OxyContin pills that often were either abused by his addicted "patients" or resold by street-level dealers to other addicts. The sentence would also deter other medical professional who might be tempted to completely abdicate their professional roles as physicians in order to illegitimately sell their access to drugs.

## II. OFFENSES OF CONVICTION

The defendant has pleaded guilty to one count of distribution of a controlled

GOV'T SENTENCING MEMORANDUM/ - 1
Case No. CR10-385RSL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

substance without a legitimate medical purpose in violation of 21 U.S.C. § 841(a)(1) and structuring a financial transaction to avoid a reporting requirement in violation of 31 U.S.C. § 5324(a)(3). The drug offense is based on the defendant's prescriptions to a patient who actually was working on behalf of the Drug Enforcement Administration and was wearing recording equipment during his encounters with the defendant. The financial offense is based on the defendant's cash deposits in August, 2010, that he structured to each be under the $10,000 reporting threshold so that the financial institution would not file a report with the Treasury Department.

### III. PLEA AGREEMENT

The defendant pleaded guilty to the two offenses described above pursuant to a plea agreement. The defendant and the government did not reach any agreement on the appropriate Sentencing Guidelines calculations. *See* Plea Agreement at 5, ¶ 7. The defendant admitted facts sufficient to support the pleas to the specific counts alleged. *See* Plea Agreement at 7, ¶ 12. The parties did not agree on the extent that additional conduct should be considered relevant conduct under the Guidelines. The plea agreement made clear that the government contemplated producing evidence that the "defendant treated additional patients who obtained prescriptions for drugs containing oxycodone and other medications . . . includ[ing] evidence that those prescriptions were outside the scope of professional practice and not for a legitimate medical purpose." *Id.* The voluminous additional information has been summarized in the Presentence Report.

The government agreed to ask for a sentence of no more than 36 months while the defendant agreed to ask for a sentence of no less than 18 months in prison. *See* Plea Agreement at 5, ¶ 7.

### IV. SENTENCING GUIDELINES

The government agrees with the Sentencing Guidelines calculations in the Presentence Report. As for the drug offense calculation, the primary factor is the quantity of controlled substances involved. The probation officer succinctly stated the challenge as follows: "The issue is particularly difficult as the defendant was a licensed medical

GOV'T SENTENCING MEMORANDUM/ - 2
Case No. CR10-385RSL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

doctor, and clearly had patients to whom he prescribed pain medication in a manner that may have been disorganized and not properly documented, but not criminal in nature." However, considering the statements of various witnesses and the experience of the "patient" working on behalf of the DEA, the probation officer properly concluded that a "significant portion of the defendant's practice involved the unlawful distribution of opiate medications." *See* PSR at 8, ¶ 27. The Guidelines direct that where a precise amount of relevant controlled substances cannot be determined, the Court should "approximate the quantity of controlled substance" using information such as financial records, similar transactions by the defendant, and the like. *See* U.S.S.G. § 2D1.1, Application Note 12.

The government agrees with the probation officer's characterization of his estimate as "conservative" and the benefit of the doubt clearly has been provided to the defendant. Even with those qualifiers in defendant's favor, the relevant numbers are shocking and show the extent to which the defendant's practice had deteriorated to a drug mill. A DEA compilation of prescription records showed that the defendant issued 5,189 prescriptions for oxycodone products in just ten months in 2009 providing for a total of 308,466 tablets. The probation officer conservatively considered only the 80mg version (popular for illicit street sales) of the OxyContin brand of oxycodone in his calculations, leaving out other forms of oxycodone, other opiates, and other pill sizes. With those limitations, the DEA compilation of prescription records showed that the defendant prescribed an astonishing 87,977 such pills in just ten months in 2009. To put that number in perspective, the Providence Regional Medical Center, Everett's largest hospital, ordered only 13,400 of those tablets during the same time period. *See* PSR at 5, ¶ 11.

//

//

GOV'T SENTENCING MEMORANDUM/ - 3
Case No. CR10-385RSL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

The following chart, taken from the affidavit of DEA Special Agent Thomas Clemen filed in this case supporting the issuance of search warrants, shows a summary of pills prescribed by the defendant compared to the medical center pharmacies during the relevant period:

| OxyContin strength | Number of tablets prescribed by WHETSTONE | Estimated number of tablets ordered by Medical Center pharmacies |
|---|---|---|
| 10 mg | 608 | 7,887 |
| 15 mg |  | 1,706 |
| 20 mg | 12,770 | 9,834 |
| 30 mg | 28 | 666 |
| 40 mg | 28,331 | 1,872 |
| 60 mg | 626 | 83 |
| 80 mg | 87,977 | 5,674 |

If, based on statements from office staff, patients, and a medical expert, only half of those 80 mg pills prescribed by the defendant are counted for Guidelines purposes, the total is still 3,519 grams of oxycodone. Under the Guidelines, as shown by the probation officer's calculations, that amount of oxycodone would be equivalent to 23,577 kilograms of marijuana, which in turn would result in an offense level of 36.

Based on the evidence in this investigation, the government agrees with the probation officer that such a calculation conservatively estimates the controlled substances involved in the defendant's offense.

The defendant, however, has challenged the accuracy of that estimate. Pursuant to Rule 32(i)(3) of the Federal Rules of Criminal Procedure, the Court must rule on any dispute that could affect sentencing. In this case, the government stands ready, if the Court desires, to call witnesses including an expert physician retained by the government

GOV'T SENTENCING MEMORANDUM/ - 4
Case No. CR10-385RSL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

who evaluated five patient files to support the contested evidence.

Given, however, that the sentence recommended by both the government and the probation officer is substantially below the Sentencing Guidelines range implicated by the above estimate, the government suggests that such an expenditure of resources may not be necessary and that in this case the Court may make an appropriate finding based on the reasonably reliable evidence before it.

First, the defendant has admitted improperly prescribing 6.72 grams of oxycodone to the single patient sent in by the DEA. This amount alone, using the Guidelines formula of converting to marijuana weight at a ration of 6,700 to one, would result in an equivalent marijuana weight of approximately 45 kilograms, which would lead to an offense level of 20. And this is for only the one patient. That patient, whose visits were recorded, showed in vivid detail the defendant's fraudulent medical practice. The defendant never actually physically examined the patient, although the defendant falsely entered in his patient chart that he did. The patient's second encounter with the defendant lasted only 49 seconds, and his third encounter lasted only one minute and 12 seconds, again with no physical examination whatsoever despite contrary entries in the patient chart. This experience with sham examinations leading to oxycodone prescriptions is consistent with experiences reported by other patients as summarized in the search warrant affidavit in this case as well as the Presentence Report.

This indisputable video evidence, when contrasted with the phony entries in the defendant's patient charts, corroborates other patient reports of similar irregularities leading inevitably to repeated oxycodone prescriptions, which often led to oxycodone being illicitly sold on the street as detailed in the Presentence Report.

Clearly, the evidence shows that the defendant's relevant conduct exceeded the oxycodone prescribed to the one patient where there was video evidence. Even adding just pills found on one of the defendant's patients when agents arrested him for drug dealing as described in paragraph 14 of the Presentence Report would add 41 80mg OxyContin pills, or 3.28 additional grams of oxycodone. That would increase the offense

GOV'T SENTENCING MEMORANDUM/ - 5
Case No. CR10-385RSL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

level to 22, just based on that one additional seizure. And even the defendant, who is minimizing his conduct in the government's view, agrees that there were multiple "instances" of improper prescriptions, with the caveat that they were "rare indeed." Defendant's Objections at 4, ¶ 15.

The probation officer is correct that any offense level should be increased by two levels under U.S.S.G. § 3B1.3 for abuse of a position of trust and use of a special skill. The defendant's position as a physician obviously "significantly facilitated" the commission of the offense because such specialized medical authority if required to issue prescriptions.

Again, just referring to those two patients, with an addition of two levels for an abuse of trust as described above, would lead to an offense level of 24. With credit for acceptance of responsibility and "safety valve" credit, the final offense level under that scenario would be 19. That in turn would lead to a Guidelines range of 30-37 months, which would encompass the recommendation by the government and the probation officer.

Clearly, as shown by the facts summarized in the Presentence Report, the defendant is responsible for significant additional quantities of improperly prescribed controlled substances. But the above analysis shows that the sentence recommended by the government and the probation officer is within a Guidelines range that contemplates only the limited amounts of oxycodone linked to just two patients. The government's recommendation is eminently reasonable.

### V. STATUTORY SENTENCING FACTORS

Although the Court is required to establish an advisory Sentencing Guidelines range, the sentence ultimately is governed by all of the factors set forth in 18 U.S.C. § 3553(a).

In this case, the government's recommended sentence would be sufficient, but not greater than necessary, to satisfy those factors. Of particular importance in this case is the need of the sentence to reflect the seriousness of the offense and to provide adequate

GOV'T SENTENCING MEMORANDUM/ - 6
Case No. CR10-385RSL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

deterrence to others.

It is hard to overstate the seriousness of the conduct in this case. As the Court knows from the depressingly large number of illicit oxycodone cases brought in both state and federal courts, oxycodone and other similar opiates are an extreme danger to the public when distributed and used without proper medical supervision.

With appropriate and careful medical supervision, the drugs can vastly improve the quality of life of patients suffering from extreme pain. Without appropriate supervision, however, the drugs can lead to addiction and dangerous overdoses. In this case, the defendant, as a physician, knew far better than the typical drug dealer the dangers of the substances he was so cavalierly distributing. But his motivation was clear: There was money to be made, and to further aggravate his offense, he took careful steps to hide his large cash transactions from the taxing authorities and went so far as to hide hundreds of thousands of dollars in cash in a storage unit.

The amount of drugs involved here simply is staggering. The precise human toll of all of those thousands and thousands of powerful narcotics released to the street thanks to the defendant of course can never be known, but surely is horrific.

The other especially important factor in this case is the deterrence of others. As the defendant has shown, providing quick prescriptions without medical justification can be financially lucrative. Others with similar authority must be aware of the consequences of grossly abusing that authority. What the defendant did in this case did not amount to simply a good faith disagreement about a proper course of medical treatment including prescription of opiates. The evidence shows that the defendant completely abdicated his trusted role as a medical provider and became a drug dealer as surely as the dealers on street corners.

In determining its recommendation, the government has considered the defendant's background and lack of any significant criminal history. It also seems clear that the defendant, at least for some patients, did provide valued medical services. But at least in his most recent years of practice, that work was subsumed by a practice in which

GOV'T SENTENCING MEMORANDUM/ - 7
Case No. CR10-385RSL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

people who wanted narcotics simply had to pay the cash.

## VI. CONCLUSION

For all of the above reasons, the government respectfully recommends a sentence of imprisonment of 36 months to be followed by three years of supervised release.

DATED this 11th day of June, 2011.

Respectfully submitted,

JENNY A. DURKAN
United States Attorney

_____
MARK PARRENT
Assistant United States Attorney
CA Bar # 159755
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Telephone: (206) 553-4113
Fax: (206) 553-4440
E-mail: Mark.Parrent2@usdoj.gov

_____
RICHARD E. COHEN
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Telephone: 206-553-2242
Fax: 206-553-6934
E-Mail: Richard.E.Cohen@usdoj.gov

GOV'T SENTENCING MEMORANDUM/ - 8
Case No. CR10-385RSL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I hereby certify that on June 11, 2012, I electronically filed the foregoing with the |
| 3 | Clerk of the Court using the CM/ECF system which will send notification of such filing |
| 4 | to the attorney(s) of record for the defendant(s). I hereby certify that I have served the |
| 5 | attorney(s) of record for the defendant(s) that are non CM/ECF participants via telefax. |

s/ Judy St. John
JUDY ST. JOHN
Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Phone: (206) 553-4439
FAX: (206) 553-4440
E-mail: Judy.Stjohn@usdoj.gov

GOV'T SENTENCING MEMORANDUM/ - 9
Case No. CR10-385RSL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970